UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:19-CR-8-RLJ-DCP |
| | ) | |
| GENE EDWARD SCHNEFF, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

On March 18, 2019, Defendant Gene Edward Schneff entered a plea of guilty to possession of fifty grams or more of methamphetamine with intent to distribute. United States District Judge Thomas W. Phillips remanded [Doc. 20, Minutes] the Defendant into custody, pending his sentencing hearing. The Defendant's June 26, 2019 sentencing hearing was continued several times and is now set for May 20, 2020. In the intervening time, the case was reassigned [Doc. 28] to United States District Judge R. Leon Jordan, and the undersigned substituted [Doc. 30] Attorney Robert R. Kurtz to represent Defendant Schneff. Defendant Schneff now moves [Doc. 37] the Court for release pending his sentencing hearing, arguing that his age and health problems place him at a higher risk of contracting COVID-19, while in custody. He contends that he is neither a flight risk, nor a danger, and that he can live with his wife and assist in the care of his invalid mother-in-law. Judge Jordan referred [Doc. 38] this motion to the undersigned. The Government responds [Doc. 39] that it does not oppose the Defendant's release, under the unique circumstances

1

of this case, provided that the Defendant has a suitable place to live and that his wife is a suitable third-party custodian.

The Court held a hearing on this motion on March 26, 2020. Assistant United States Attorney Brent Nelson Jones participated on behalf of the Government. Attorney Kurtz represented the Defendant, who waived his appearance at the hearing. The Defendant's wife, Belinda King, participated by telephone. After hearing the arguments of the parties, reviewing the relevant caselaw, and considering the proposed conditions, the undersigned finds that the Defendant has failed to show that the threat of serious complications from contracting COVID-19 is an exceptional reason warranting his release. Accordingly, the undersigned respectfully recommends that the Defendant's motion for release pending his sentencing hearing be denied.

## I.     PROCEDURAL POSTURE AND APPLICABLE LAW

Defendant Schneff first appeared on January 10, 2019, pursuant to his arrest on a Criminal Complaint [Doc. 1]. At his initial appearance, the Defendant waived [Doc. 6] a detention hearing, reserving his right to move for one later, and was detained [Doc. 8] pending further proceedings in this case. At his January 31, 2019 initial appearance and arraignment on the Indictment, the Defendant similarly waived [Doc. 12] and reserved his right to a detention hearing and remained detained [Doc. 13]. As noted above, the Defendant entered a guilty plea on March 18, 2019. At that time, Judge Phillips ordered that he remain in custody pending his sentencing hearing.

Because the Defendant has admitted his guilt to a violation of the Controlled Substances Act ("CSA"), for which the maximum potential sentence is ten years or more of incarceration, he must meet a higher standard to show he is eligible for release pending his sentencing hearing. *See* 18 U.S.C. § 3143 (relating to the release or detention of a defendant pending sentencing). A person

2

found guilty of "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the" CSA, 18 U.S.C. § 3142(f)(1)(C), must be detained pending sentencing, unless:

> (A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
>
> (ii)   an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; **and**
>
> (B) The judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

18 U.S.C. § 3143(a)(2) (emphasis supplied).  "The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant."  Fed. R. Crim. P. 46(c).  Defendant Schneff cannot meet either subsection (A)(i) or (A)(ii), and, thus, his detention is mandatory.

The Court finds the Defendant's motion is essentially an appeal of Judge Phillips's order that he remain in custody pending his sentencing hearing, pursuant to 18 U.S.C. § 3145(c).  "A person subject to detention pursuant to section 3143(a)(2) . . .  and who meets the conditions of release set forth in section 3143(a)(1) . . . may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."  18 U.S.C. § 3145(c).  Accordingly, a defendant appealing an order of detention must show (1) clear and convincing evidence that he or she is not likely to flee or to be a danger and (2) clear evidence of exceptional reasons why he or she should not be detained.  18 U.S.C. § 3143(c).  The undersigned analyzes whether Defendant Schneff has carried this burden below.

3

## II.    ANALYSIS

The Court finds Defendant Schneff has demonstrated by clear and convincing evidence that he is neither a flight risk or a danger.  However, the Court finds the Defendant's argument that he could suffer serious complications if he contracted COVID-19 in the jail to be speculative. Therefore, the Defendant has failed to show an exceptional reason warranting his release pending sentencing.

### A.  Flight Risk or Danger

In analyzing whether there are conditions of release that would reasonably assure the appearance of the Defendant at further proceedings and the safety of others and the community, the Court must evaluate the information presented by the parties[1] in light of the factors in 18 U.S.C. § 3142(g).  Regarding the first factor, which is the nature and circumstances of the offense, 18 U.S.C. § 3142(g)(1), the Court finds that the Defendant entered a guilty plea to possession of fifty grams or more of methamphetamine with intent to distribute.  Because this offense involves a controlled substance, this factor weighs in favor of detention.

The Court next considers the weight of the evidence against the Defendant.  18 U.S.C. § 3142(g)(2).  Our appellate court has instructed that "[t]his factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt."  *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010).  In the instant case, the Court finds little evidence of the Defendant's dangerousness.  The Presentence Investigation Report [Doc. 22] reveals that the Defendant's most recent criminal history occurred twenty-five years ago.  Moreover, the factual

---

[1]In addition to the testimony of the Defendant's wife, Belinda King, which was presented at the motion hearing, the Court has reviewed the Presentence Investigation Report [Doc. 22] and the recent memorandum by United States Probation Officer Travis Worthington.

4

basis to the Defendant's plea agreement [Doc. 17] states that the Defendant ordered methamphetamine from a source on the dark web, he received the methamphetamine through the mail, and the methamphetamine was intercepted by law enforcement immediately after the Defendant took delivery of the package. From the information before the Court, this appears to be an isolated incident. The Court finds this factor supports release.

The third factor to be considered is the Defendant's history and characteristics. 18 U.S.C. § 3242(g)(3). With regard to this factor, the Court finds the Defendant's family ties, lack of any recent criminal history, and record of appearance at court proceedings support release. The Defendant proposes to live with his wife and mother-in-law, at the home where he resided for approximately five years prior to his arrest in this case. The Defendant's wife, who is a nurse and provides home healthcare to a disabled child, agrees to serve as the Defendant's third-party custodian. At the hearing, defense counsel stated that the Defendant was amenable to home confinement, and Ms. King stated that the family only has one vehicle. Ms. King also testified that the Defendant could resume caring for his mother-in-law, who is in poor health and suffers from dementia. The Court finds the Defendant's proposed living situation reveals he will not be a risk of flight or a danger. The Defendant's lack of recent criminal history is discussed above. The Court finds no evidence that the Defendant has ever failed to report to court as required, and Ms. King testified that she will provide transportation for the Defendant to appear at court proceedings or meetings with his probation officer. The Court finds this factor weighs solidly in favor of release.

The final and fourth factor is the nature and seriousness of the danger that would be posed by the Defendant's release. 18 U.S.C. § 3142(g)(4). The Court finds that despite the seriousness

5

of the Defendant's offense, Defendant Schneff does not pose a particular danger to any person or to the community, if released.  Moreover, the Court finds that the proposed conditions that the Defendant be confined to his home, where he would be supervised by his wife as third-party custodian and where he could perform the service of caring for his mother-in-law, would alleviate any concerns about the Defendant reoffending.  The Court would recommend the conditions[2] proposed by the United States Probation Office and add the conditions of home confinement and that the defendant have no contact with any known convicted felons, drug dealers, illegal drug users, or any person who violates the law.

The Court finds that the Defendant has shown by clear and convincing evidence that he will not be a danger or a flight risk if released on conditions.

### B.  Exceptional Reasons Under § 3145(c)

The Court's finding that the Defendant would not present a flight risk or danger is only half of the analysis.  Defendant Schneff must still show clear evidence of exceptional reasons why he should not be detained, 18 U.S.C. § 3145(c).  What constitutes an "exceptional reason" for purposes of § 3145(c) is not defined in the statute.  *United States v. Christman*, 712 F. Supp. 2d 651, 653 (E.D. Ky 2010).  However, the plain language of the statute reveals that release, despite the requirement of mandatory detention under § 3143(a)(2), must be "infrequent" and "rare."  *Id.* at 694.  "[E]ven when there is solid assurance that the defendant will return for sentencing and will

---

[2] The USPO proposes the following conditions:  That the Defendant's wife serve as his third party custodian, that the Defendant be supervised by a probation officer, that he not obtain a passport, that his travel be restricted to the Eastern District of Tennessee, that he avoid all contact with any witness or victim, that he not possess a firearm or other weapon, that he not use alcohol excessively, that he not unlawfully use or possess controlled substances, and that he report all contact with law enforcement to his supervising probation officer.

6

do no harm during the interim, § 3145(c) will provide infrequent relief." *Id.* Moreover, "even exceptional reasons would not justify release if they are based on nothing more than probability, conjecture, intuition or speculation. Instead, according to the statute's explicit language, exceptional reasons must be 'clearly shown' to render a person's detention as inappropriate." *Id.*

The Defendant argues that his age and his medical conditions make him more susceptible to serious and possibly deadly complications, if he contracts COVID-19.[3] The Defendant is sixty-nine years old and suffers from high blood pressure, diverticulitis, an enlarged prostate, and degenerative back and hips. The Defendant argues that his immune system is suppressed as a result of his diverticulitis and he is at greater risk of infection. The Court notes that the Defendant also was diagnosed with emphysema, following an accident causing a collapsed lung in June 2016; however, it does not appear that the Defendant is currently being treated for this condition. The Defendant also argues that he is at greater risk of exposure to COVID-19 in jail, due to the constant influx of new prisoners from other places and from the guards and other staff that leave the jail daily. He contends that he cannot maintain social distance or recommended hygiene protocol while incarcerated. Defendant Schneff acknowledged that there are presently no known cases of COVID-19 at the Knox County Jail; however, he maintains that once there is an exposure to COVID-19, it is already too late. He argues that the greater risk he will be exposed to COVID-19, while in jail, and the greater risk of serious or deadly complications, if he is exposed, are exceptional reasons warranting his release pending sentencing.

---

[3] In his motion, the Defendant argues he has a greater chance of contracting COVID-19, due to his age and health problems. At the motion hearing, the Defendant argued that he has the same risk of contracting the virus, if exposed, as anyone else, but has a greater chance of having serious and life-threatening complications from COVID-19.

7

"Courts have found that chronic medical conditions are not exceptional reasons justifying release." *United States v. Parker*, No. 1:10-CR-28, 2011 WL 672309, *2 (E.D. Tenn. Feb. 18, 2011) (Lee, MJ) (finding major depressive disorder is not an exceptional reason for release pending sentencing); *see, e.g.*, *United States v. Brown*, 368 F.3d 992, 993 (8th Cir. 2004) (per curiam) (continuing treatment for depression is not an exceptional reason for release); *United States v. Lieberman*, 496 F. Supp. 2d 584, 587 (E.D. Pa. 2007) (denying release to paraplegic defendant requesting experimental treatment); *United States v. Bloomer*, 791 F. Supp. 100, 102 (D. Vt. 1992) (denying release for defendant with Bell's palsy). In contrast, "[a]n acute need for medical care" can be an exceptional reason, depending on the facts of the particular case. *Parker*, 2011 WL 672309, *2; *see United States v. Spigner*, 416 F.3d 708, 713 (8th Cir. 2005) (observing the district judge found the defendant's need for dialysis treatment and surgery to warrant release).

In the instant case, Defendant Schneff seeks release based upon the risk that he may experience an acute need for medical care, if he contracts COVID-19. Although the Defendant's risk of serious complications from COVID-19 is likely greater due to his age and his medical condition rendering him immunocompromised,[4] he does not have COVID-19 or a current complication therefrom. He also agrees that he has not, to his knowledge, been exposed to COVID-19 at the jail and that there is no known case of anyone at the jail being exposed. Thus,

---

[4] The Center for Disease Control and Prevention ("CDC") states on its website, that individuals over age sixty-five and those with underlying medical conditions, such as conditions rendering the person immunocompromised "might be at higher risk for severe illness from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html (last visited March 31, 2020).

the Court finds the Defendant's argument to be speculative and not clear evidence of an exceptional reason to release him.

Other district courts have found that the risk of COVID-19 in jail is not an exceptional reason under § 3145(c), even for defendants over sixty-five years old and/or with medical conditions. *United States v. Morris,* No. 17-107(01) (DWF/TNL), 2020 WL 1471683, **3-4 (D. Minn. Mar. 17, 2020) (holding risk of sixty-six-year-old defendant with diabetes and high blood pressure contracting COVID-19 in jail was not exceptional reason under § 3145(c)); *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020) (holding risks due to defendant's asthma, high blood pressure, and diabetes, insufficient to overcome proffer that jail implementing procedures to protect inmates from exposure); *see also United States v. Kerr*, No. 3:19-cr-296-L, 2020 WL 1529180, **2-3 (N.D. TX Mar. 31, 2020) (holding risk of contracting COVID-19 not an exceptional reason for defendant, age fifty).[5]  In *Morris*, the Court observed that there are presently no cases of COVID-19 in the jail, and the jail has taken "appropriate

---

[5] The undersigned observes that at least one court has found an exceptional reason to release a defendant, with asthma, pending sentencing based upon other inmates with COVID-19 at the jail. *United States v. McKenzie*, 18 Cr. 834 (PAE), 2020 WL 1503669, **2-3 (S.D.N.Y. Mar. 30, 2020) (releasing defendant to home incarceration).  Other courts have found the risk of COVID-19 presents an exceptional reason under § 3145(c).  *United States v. Fellela*, No. 3:19-cr-79 (JAM) , 2020 WL 1457877, *1 (D. Conn. Mar. 20, 2020) (releasing defendant, age sixty-two with diabetes, to home confinement because of close quarters in jail); *see also United States v. Harris*, No. 19-356, 2020 WL 1482342, *1 (D. D.C. Mar. 26, 2020) (finding risk of COVID-19 outbreak in jail an exceptional reason, due to risk of overburdening medical resources of jail and community).  In *Harris*, the court expanded upon its order the following day, finding that the risks associated with COVID-19 can be an exceptional reason in the appropriate case, that the jail has one inmate with COVID-19, and that the detention of the defendant presented a "'close case' even before the pandemic developed[.]"  *United States v. Harris*, ___ F. Supp. 3d ___, No. 19-356, 2020 WL 1503444 (D. D.C. Mar. 27, 2020).

9

measures to prevent an outbreak." *Morris,* at *4 (also finding defendant had not shown clear and convincing evidence that he is not a danger).

A magistrate judge in the District of Kansas recently analyzed whether a pretrial detainee, who is an insulin-dependent diabetic, could demonstrate a "compelling reason" for temporary release, pursuant to 18 U.S.C. § 3142(i), based upon his increased risk of contracting COVID-19 and developing complications therefrom. *United States v. Clark*, No. 19-40068-01-HTL, 2020 WL 1446895 (D. Kan. Mar. 25, 2020). Defendant Clark argued, as does Defendant Schneff, that he cannot practice social distancing in jail and that jails are rife with the potential for a COVID-19 outbreak. *Id. at *2.* The court found "a defendant should not be entitled to temporary release . . . based solely on generalized COVID-19 fears and speculation." *Id.* at *3. Instead, "the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary[.]" *Id.*

In *Clark,* the court evaluated, among other factors, the specificity of the defendant's COVID-19 concerns. *Id*. at **3-5. While the court found the defendant had a "specific and particular concern" regarding his increased risk of having a serious illness from COVID-19, due to his diabetes, it found the defendant's arguments about being incarcerated to be "general and speculative." *Id.* at **4-5. The court observed that the defendant was not aware of any known cases of COVID-19 at the jail and that the jail "is reportedly taking reasonable recommended precautions, including having medical staff screen inmates during intake for COVID-19 risks, isolating those deemed to be at high risk, and promoting other recommended hygiene habits." *Id.* at *5.

10

In the instant case, the Court finds that the Knox County Jail, where Defendant Schneff is detained, has suspended in-person visits at the jail and "is encouraging inmates to practice 'social distancing', which means staying as far apart as possible" and "advising inmates to avoid shaking hands, [to] wash[] their hands often, [to] not touch[] their face, nose, mouth or eyes, and [to] refrain[] from touching 'common areas' throughout the facility." *See* Knox County Jail COVID-19 Visitation Policy, https://www.jailexchange.com/city-and-county-jails/tennessee/knox-county/knox-county-jail/covid-19-coronavirus-visitation-policy (last visited Mar. 31, 2020). Additionally, the Knox County Jail is screening new inmates, screening staff when they report to work daily, and separating and quarantining inmates showing symptoms consistent with COVID-19. *See* Hayes Hickman, *Knox County sheriff: 22 inmates are in quarantine, but none tested for coronavirus*, Knoxville News Sentinel, Mar. 30, 2020, *available at* https://www.knoxnews.com/story/news/health/2020/03/30/knox-county-sheriff-inmates-coronavirus-quarantine/5089468002. In other words, the jail is taking measures to minimize the risk of COVID-19 exposure. Finally, the Court finds no evidence that the Knox County Jail could not provide the Defendant with adequate medical care or transport him to a hospital, if he became seriously ill. *See Clark*, 2020WL 1446895, *6. The Court finds that the Defendant's arguments about exposure to COVID-19 at the jail are speculative, in light of the lack of any known COVID-19 exposures and the measures taken by the jail to mitigate exposure. Accordingly, the Court finds that the Defendant has not shown clear evidence of an exceptional reason for release.

11

## III.    CONCLUSION

In summary, the Court finds that the Defendant would not be a danger or a flight risk, if released on the conditions examined herein.  However, the Defendant has failed to show an exceptional reason why mandatory detention should not apply.  For the reasons stated herein, the undersigned **RECOMMENDS** the Defendant remain detained pending his sentencing hearing and that his Motion for Release Pending Sentencing [Doc. 37] be denied.[6]

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[6] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended).  Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order).  The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general.  *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

12